**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Judd Ranch, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-1245-WEB |
| ) | |
| Glaser Trucking Service, Inc., ) | |
| Chet Roberts Trucking, LLC, and ) | |
| Empire Fire and Marine Insurance ) | |
| Company, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

MEMORANDUM AND ORDER

Now before the Court is Defendant Empire Fire and Marine Insurance Company's ("Empire Insurance's") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). (Doc. 10). Judd Ranch, Inc. ("Judd Ranch"), a cattle ranch company, is suing Glaser Trucking Service, Inc. ("Glaser Trucking"), a common carrier, Chet Roberts Trucking, LLC ("Chet Roberts"), a tractor-trailer operator, and Empire Insurance, the liability insurer of Glaser Trucking, for negligence.

Defendant Glaser Trucking and plaintiff Judd Ranch have filed responses opposing Empire Insurance's motion for summary judgment. (Docs. 19, 20). Defendant Chet Roberts did not file a response. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

I. Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually

unsupported claims. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court views the evidence and all reasonable inferences in favor of the non-moving party. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001). A fact is "'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* A genuine factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler,* 144 F.3d at 670-71. The movant can do this by demonstrating a lack of evidence on an essential element of the nonmovant's claim. *Id.* at 671. "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing FED. R. CIV. P. 56(e)).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671. The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

## II.  Facts

The following facts are uncontroverted. Judd Ranch claims that a trailer, operated by Chet

Roberts and owned by Glaser Trucking, delivered feed pellets to its cattle ranch. Judd Ranch claims the feed pellet delivery was made without properly cleaning the trailer after the trailer hauled scrap metal and, as a result, metal fragments mixed within the feed pellets that were delivered. Judd Ranch claims that by the time the metal fragments were discovered in the feed pellets, a substantial portion had been ingested by the cattle. The scrap metal consisted of aluminum pieces that had already been recycled at a facility in Kansas City, Missouri and delivered to an aluminum supply manufacturer in Davenport, Iowa.

Judd Ranch claims it has been damaged as a result of its cattle's consumption of the metal fragments mixed within the feed pellets. Judd Ranch claims the cattle are beginning to develop traumatic reticuloperitonitis and, therefore, it is unable to sell its purebred premium Gelbvieh-Angus cattle without first providing notice, which will greatly diminish the market value of the cattle.

Glaser Trucking, the owner of the trailer that delivered the feed pellets, maintained a policy of insurance from Empire Insurance. The insurance policy was purchased by Glaser Trucking for the purpose of complying with Kansas statutes requiring liability insurance for trucking companies. The insurance policy contained the following language:

> B.  Exclusions
>
> This insurance does not apply to any of the following:
>
> . . .
>
> 11.  Pollution
>
> 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':
>
> a.  That are, or that are contained in any property that is:

    (1)  Being transported or towed by, handled, or handled for movement into, onto or from, the covered 'auto';

    (2)  Otherwise in the course of transit by or on behalf of the 'insured'; or

    (3)  Being stored, disposed of, treated or processed in or upon the covered 'auto';

  b.  Before the 'pollutants' or any property in which the 'pollutants' are contained are moved from the place where they are accepted by the 'insured' for movement into or onto the covered 'auto'; or

  c.  After the 'pollutants' or any property in which the 'pollutants' are contained are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured'.

(Def's Ex. A, Doc. 12-7 at 12-13). Pollutants are defined by the insurance policy as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Def's Ex. A., Doc. 12-7 at 19).

### III.  K.S.A. § 66-1,128

As an initial matter, Glaser Trucking and Judd Ranch propose that K.S.A. § 66-1,128 is incorporated into the insurance policy at issue and provides coverage for the alleged negligence. Section 66-1,28 governs motor carrier liability insurance requirements and states that no certificate or license shall be issued by the state corporation commission to any public or contract motor carrier until an applicant files and has approved a liability insurance policy in specified amounts. *See* K.S.A. § 66-1,128(a).

Despite the arguments to the contrary, it is clear to the Court that section 66-1,128 is nothing

more than a statute mandating liability insurance for public motor carriers operating in Kansas. *See* K.S.A. § 66-1,128(a) (requiring public motor carriers to file with the Kansas Corporation Commission an approved liability insurance policy that "binds the obligors" with regard to "the negligent operation" of the carrier; specifying minimum amounts; prohibiting the issuance of licenses to carriers until compliance with this requirement is made); *Kirtland v. Tri-State Ins. Co.*, 220 Kan. 631, 634, 633 P.2d 199, 202 (1976) (stating that section 66-1,128 "is not substantive, but is remedial in nature.  It does not give the injured party any new rights or a new cause of action. . . . The power to sue the insurance company directly is only a statutory remedy designed to assist the injured party in effectuating a successful recovery when liability is established."); *King v. Am. Family Ins. Co.*, 19 Kan. App. 2d 620, 622, 874 P.2d 691, 694 (Kan. Ct. App. 1994) (stating that K.S.A. § 66-1,128 permits direct actions against the insurer of a public motor carrier because the statute mandates that the motor carrier carry liability insurance, rather than indemnity insurance, citing *White v. Goodville Mut. Cas. Co.*, 226 Kan. 191, 596 P.2d 1229 (1979)).

The Kansas courts have held that this statute, and the terms it requires, must be complied with.  *See Dunn v. Jones*, 143 Kan. 218, 57 P.2d 16, (1936) (stating that "the statutory kind of policy must be furnished, or the motor carrier must keep off the highway").  This, however, does not change the fact that section 66-1,128 does not mandate anything other than a liability policy and minimum amounts for that liability coverage.  Section 6-1,128 dos not provide any other terms for the required liability insurance for public motor carriers.  It merely requires that for a public motor carrier to operate in Kansas, the carrier must first file and have approved the requisite liability insurance with the minimum specified amounts.  As a result, section 66-1,128 is not dispositive and the Court defers to the general Kansas law stating the standards for interpreting exclusions in

insurance policies.

## IV.  Law Governing Insurance Contracts

In Kansas, the "language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties." *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 481 (1969).  The risks insured against arising under an insurance policy are determined by the terms of that policy.  *Isaac v. Reliance Ins. Co.*, 201 Kan. 288, 291, 440 P.2d 600, 603 (1968).  "[T]he construction and effect of a contract of insurance is a matter of law to be determined by the court."  *Scott v. Keever*, 212 Kan. 719, 721, 512 P.2d 346, 349-50 (1973).

The rules governing the interpretation of an insurance contract are well-settled.  Recently, the Kansas Supreme Court succinctly stated these general principles as follows:

> If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used.  An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language.  An ambiguity does not exist merely because the parties disagree on the interpretation of the language.
>
> To determine whether an insurance contract is ambiguous, the court must not consider what the insurer intends the language to mean.  Instead, the court must view the language as to what a reasonably prudent insured would understand the language to mean.  This does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage.
>
> Courts should not strain to find an ambiguity when common sense shows there is none.  The court must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements.
>
> As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed.  The insurer assumes the duty to

> define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured.

*Marshall v. Kan. Med. Mut. Ins. Co.*, 276 Kan. 97, 111-12, 73 P.3d 120, 130 (2003) (internal citations omitted). These principles have repeatedly been stated by the Kansas courts. *See, e.g.*, *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 23, 804 P.2d 1374, 1379 (1991); *Scott*, 212 Kan. at 723-25, 512 P.2d at 350-51; *Fiorella v. Travelers Prop. Cas. Ins. Co.*, 142 P.3d 321, 326 (Kan. Ct. App. 2006); *Anderson v. Nationwide Life Ins. Co.*, 6 Kan. App. 2d 163, 167, 627 P.2d 344, 347 (Kan. Ct. App. 1981).

"[W]hen an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden of proof rests upon the insurer to prove the facts which bring the case within such specific exception." *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F. Supp. 1463, 1468 (D. Kan. 1991).

## V. Construction of the Pollution Exclusion Clause

The narrow issue before the Court is whether the underlying incident giving rise to this case comes within the pollution exclusion language of the Empire Insurance policy issued to Glaser Trucking. If the policy does not provide coverage for the alleged negligence, no recovery may be had by Judd Ranch against Empire Insurance and Empire Insurance's motion for summary judgment must be granted. If the incident does not come within the pollution exclusion clause, Empire Insurance's motion for summary judgment must be denied.

The insurance policy at issue excludes coverage for property damage caused by pollution. Because the policy terms at issue are an exclusion, following the general rule in Kansas with regard

to the interpretation of exclusionary clauses in insurance contracts, the exclusion is narrowly construed. *Marshall*, 276 Kan. at 112, 73 P.3d at 130. The parties opposing summary judgment argue that the exclusion is ambiguous.

The Court begins with the insurance policy's definition of pollutant. A pollutant is defined by the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." This definition contains no language of doubtful or conflicting meaning, which would support a finding of ambiguity. *See id.* ("An insurance policy is ambiguous when in contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language.").

A reasonable construction of this language is that a pollutant under the insurance policy is any irritating or contaminating substance. This substance could be a solid, liquid, gaseous or thermal substance. These words all modify the phrase "irritant or contaminant," which is the central subject of the definition. An irritant is a source of "irritation, especially physical irritation." *See The American Heritage Dictionary of the English Language* 954 (Houghton Mifflin Company 3d ed. 1996). To contaminate means to "make impure or unclean by contact or mixture." *Id.* at 406; *see also Black's Law Dictionary* 288 (5th ed. 1979) ("Contamination" is the "Condition of impurity resulting from mixture or contact with foreign substance."). The examples that are then listed are simply what the insurer believes are types of "irritants or contaminants." While it is true that this definition is very broad, that fact alone does not make the definition ambiguous.

The Court also finds that the pollution exclusion clause is not ambiguous. The pollution exclusion language excludes coverage for property damage "arising out of the actual, alleged or

8

threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" The parties make no argument that this portion of the policy is ambiguous and a reasonable construction of this language would not support a finding of ambiguity.

Kansas appellate court cases offer further support for this Court's finding that the insurance policy's pollution exclusion clause and the definition of pollutant are not ambiguous. In *Crescent Oil Co, Inc. v. Federated Mut. Ins. Co.*, 20 Kan. App. 2d 428, 888 P.2d 869 (Kan. Ct. App. 1995), the Kansas Court of Appeals discussed an insurance policy with a pollution exclusion clause. The court was asked to determine whether an occurrence of gasoline leaking from a storage tank into the basement of a building on adjoining property came within the pollution exclusion clause. *Id.* at 429, 888 P.2d at 870. The policy at issue contained a very similar definition of pollutant as found in the Empire Insurance policy. *Id.* at 431, 888 P.2d at 871. The court found that the definition of pollutant was not ambiguous because once gasoline escapes into another medium it becomes a contaminant and therefore a pollutant. *Id.* ("While the gasoline was segregated in a storage tank, the liquid was not a contaminant . . .; once it escapes into another medium such as a neighbor's basement, it would become a contaminant and thus a pollutant under the policy."). The court rejected the contention that pollution exclusion clauses applied only to "active intentional industrial pollution" because that limitation had no basis in the plain language used by the exclusion. *Id.* at 433, 888 P.2d at 872. The court ultimately concluded that the "clear language of the pollution exclusion excludes coverage for property damage caused by gasoline leaking from [the insured's] underground tanks." *Id.* at 437, 888 P.2d at 875.

In a more recent Kansas case, *Atl. Ave. Assocs. v. Cent. Solutions, Inc.*, 29 Kan. App. 2d 169, 24 P.3d 188 (2001), the Kansas Court of Appeals also found a pollution exclusion clause

unambiguous. The court was asked to determine whether liquid cement cleaner that had leaked out of a 55-gallon drum and damaged the concrete it came into contact with was an occurrence that came within a pollution exclusion clause. *Id.* at 170, 24 P.2d at 189. The pollution exclusion clause and the definition of pollutant were identical to the language of the Empire Insurance policy. *Id.* at 170-71, 24 P.3d at 190. The court held that the language was not ambiguous based on the plain language of the policy. *Id.* at 173, 24 P.2d at 191.

The Court realizes that other states, in the relevant cases cited by those parties opposing summary judgment, have reached a contrary result. *See, e.g.*, *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15 (N.Y. 2003) (holding that a pollution exclusion clause used "terms of art" and was therefore ambiguous as applied to a personal injury claim based on the inhalation of paint fumes); *Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418 (Tex. App. 2000) (holding that a limiting clause caused a pollution exclusion clause to be ambiguous as applied to claims based on the inhalation of smoke from a factory fire); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997) (finding a pollution exclusion clause overbroad as literally applied, noting the use of "terms of art," and limiting its application to traditional environmental pollutants in a claim based on inhalation of carbon monoxide fumes); *Weaver v. Royal Ins. Co. of Am.*, 674 A.2d 975 (N.H. 1996) (finding a pollution exclusion clause ambiguous because it used "terms of art" and limiting its application to environmental pollution in a personal injury claim based on the ingestion of lead paint and dust particles); *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692 (N.C. Ct. App. 1991), *overruled on other grounds by Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 303 (N.C. 2000), (finding that a pollution exclusion clause used "terms of art" from environmental law and limiting its application to environmental discharges in a claim based on

fumes emanating from a resurfacing product). A common theme in all these cases is that the courts have interpreted the pollution exclusion clauses as using "terms of art" with limited meaning, rather than applying the plain meaning of the words used in the insurance policy.

This Court, however, is bound by Kansas law. Kansas cases require the application of the plain meaning of the language used in an insurance policy. *Marshall*, 276 Kan. at 111, 73 P.3d at 130 ("If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used."). In addition, the Kansas appellate courts' determination in *Crescent Oil Co* and *Atl. Ave. Assocs.* that the language used in a pollution exclusion clause is not ambiguous is persuasive authority for this Court. This is the best indicator of how the Kansas courts would rule on this issue.

The Court finds that the language of the pollution exclusion clause and the definition of pollutant are not ambiguous. *See Marshall*, 276 Kan. at 111, 73 P.3d at 130 ("The court must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements.").

## VI.  Application of the Pollution Exclusion Clause

A finding that the insurance policy's definition of pollutant and the pollution exclusion clause are unambiguous is not the end of the Court's inquiry. The final matter, of course, is whether the facts of this case come within the pollution exclusion clause's limitation of coverage.

Empire Insurance initially argues that the scrap metal constituted waste under the definition of pollutant and the waste, actually or allegedly, was discharged, dispersed or released, thereby placing the facts of this case within the pollution exclusion clause. (Doc. 11 at 4). Glaser Trucking responds by arguing that the scrap metal was not waste within the definition of the policy because

it was material that had already been recycled and was, therefore, properly considered refined raw material. (Doc. 19 at 5). Judd Ranch also responds by arguing that the aluminum scrap metal does not fit within the definition of a pollutant. (*See* Doc. 20 at 6 ("The material in question was recycled aluminum, which obviously is not a waste product.")). Empire Insurance's reply argues that:

> The policy in question defines a 'pollutant' to include any 'solid' 'irritant,' including 'chemicals.' Plaintiff's complaint shows that plaintiff has filed suit claiming that a 'solid' (aluminum) caused 'property damage' (injured the cows) because it was 'disturbed' or 'seeped' or 'migrated' or was 'released' into cattle feed and plaintiff claims that the aluminum was an 'irritant.' Simply stated, plaintiff claims the cattle feed became contaminated or polluted by a harmful chemical.

(Doc. 25 at 6).

Applying the insurance policy's terms to the facts of this case, the Court finds that the pollution exclusion clause encompasses the uncontroverted facts. The aluminum scrap metal is a pollutant because it is a solid contaminant. The scrap metal is a contaminant because once it mixed with another substance, the feed pellets, it became harmful. *See Crescent Oil Co*, 20 Kan. App. 2d at 461, 888 P.2d at 871-72 (holding that while gasoline was segregated in a storage tank, the liquid was not a contaminant, but that once the gasoline escaped into another medium where it did not belong, it became a contaminant and therefore a pollutant); *Atl. Ave. Assocs.*, 29 Kan. App. 2d at 174, 24 P.3d at 191 (noting that liquid cement cleaner is not like "other products such as body lotions and shampoos [which] would not have caused the particular kind and extent of damages to the concrete floor of the warehouse, and they would not be defined as pollutants"). It is irrelevant whether the aluminum scrap metal qualifies as a waste under the definition of pollutant. Waste is merely one example of the type of irritants or contaminants that the definition of pollutant applies to.

The analysis of the larger, and more important, issue, however, is more difficult. Even if the aluminum scrap metal qualifies as a pollutant, the Court must still determine whether the contamination of the feed pellets by the aluminum scrap metal falls within the terms of the pollution exclusion clause. Empire Insurance characterizes the underlying occurrence as property damage caused by the aluminum scrap metal being discharged, dispersed, or released[1] into the cattle feed. Neither Judd Ranch nor Glaser Trucking reach this question because both parties contend that the aluminum scrap metal is not a pollutant.

The Court concludes that the pollution exclusion clause encompasses the facts at hand. The pollution occurred when the alleged dispersal of the aluminum scrap metal into the cattle feed pellets occurred. A dispersal is simply a distribution. *See The American Heritage Dictionary of the English Language* 537 (Houghton Mifflin Company 3d ed. 1996). Here, the aluminum scrap metal was distributed amongst the cattle feed pellets. Judd Ranch alleges that its property (the cattle) was damaged as a result of the aluminum scrap metal combining with the feed pellets. This alleged harmful combination arose when the feed pellets were added to the truck that had previously held the aluminum scrap metal and the aluminum scrap metal was distributed amongst the feed pellets. The fact that it was the feed pellets that were added to the scrap metal, rather than the scrap metal being added to the feed pellets, is irrelevant.

Application of the pollution exclusion clause becomes even more clear when the remainder of the pollution exclusion section is applied. *See Marshall*, 276 Kan. at 111, 73 P.3d at 130 ("The court must consider the terms of an insurance policy as a whole, without fragmenting the various

---

[1] In its reply, Empire Insurance additionally argues that the property damage was caused by the seeping or migrating of the aluminum scrap metal. (*See* Docs. 11 at 4, 20 at 6).

provisions and endorsements."). The portion of the pollution exclusion clause applying the exclusion to situations in which there is a dispersal of pollutants after the pollutants are moved from the automobile to the place of delivery shows that the exclusion is broad enough to cover the situation at hand. (*See* Def's Ex. A, Doc. 12-7 at 12-13 (excluding "'property damage' arising out of the actual, alleged or threatened . . . dispersal . . . of 'pollutants': After the 'pollutants' . . . are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured.'")). Judd Ranch alleges that when the aluminum scrap metal was delivered, not all of it was removed from the truck. The aluminum scrap metal became a contaminant when it was dispersed amongst the feed pellets. This occurrence comes within the pollution exclusion language and is excluded from coverage.

Empire Insurance has shown that there are no material factual disputes and that it is entitled to judgment as a matter of law. *See Adler,* 144 F.3d at 670-71. Empire Insurance has met its burden of showing the pollution exclusion's exception to liability applies. Defendant Empire Insurance's motion for summary judgment (Doc. 10) is GRANTED.

SO ORDERED this   22nd   day of May 2007.

                                                    s/Wesley E. Brown
                                                  Wesley E. Brown, U.S. Senior District Judge